■ In the Matter of MARY GUSTAFSON, an Incapacitated Person. GEORGE HUTCHINSON, Appellant; BETTY LUGO, ESQ., Respondent. [764 NYS2d 46] —Order, Supreme Court, Bronx County (Norma Ruiz, J.), entered August 14, 2002, which, after a hearing, granted the petition to remove appellant George Hutchinson as Mental Hygiene Law article 81 guardian due to his failure to file promptly annual reports as required by the Mental Hygiene Law and the failure to seek leave of court prior to disbursement of fees from the incapacitated person's estate, and appointed a non-relative as guardian, unanimously reversed, on the law, the facts and in the exercise of discretion,

---

without costs, the petition denied and the matter remanded for further proceedings before another justice.

This appeal arises out of the June 2001 petition by Charles Hutchinson (Charles), to remove his brother, George Hutchinson (Guardian), as article 81 guardian for the person and property of their mother, Mary Gustafson, an incapacitated person (IP). Charles's petition alleged that the Guardian, appointed in July 1997, had made payment of fees from the IP's estate without prior court approval and that the annual guardian reports had not been filed within the time strictures of section 81.31 of the Mental Hygiene Law.

In July 2001, the Guardian cross-moved for court ratification of his prior disbursements for legal and investment advisory fees, arguing that the payments were justified as legitimate expenditures on behalf of the guardianship estate. The Guardian's attorney also explained that the reason the annual guardian reports were filed late was because the prior Court Examiner had objected to the format of the earlier reports and instructed the attorney not to file until she reviewed the reports, but stopped communicating with him. Further delays resulted from the replacement of the originally assigned Justice and his successor Justice, upon their retirement and promotion, respectively, as well as the appointment of a new Court Examiner.

At the hearing on the motion to remove the Guardian, the administrator of the IP's nursing home testified that the Guardian was attentive and involved in the IP's care, while Charles was not. The portfolio manager of the guardianship account testified that the $58,000 in fees received over four years of managing the account amounted to less than 1% of the account's value and that the account had significantly outperformed the depressed stock market during those years.

Around the same time as the hearing, the Court Examiner submitted a report finding that the Guardian had failed to file timely annual reports, the Guardian had paid himself $5,781 in excess commissions (which were subsequently returned to the IP's estate), the Guardian had paid $35,000 in legal fees without prior court authorization, and there were some accounting errors in the annual reports; the Court Examiner recommended that a coguardian for property management be appointed temporarily to assist the Guardian in filing amended reports for the years 1999 and 2000 and to investigate whether there had been any impropriety in the management of the guardianship account.

After the aforementioned hearing, the court appointed a

temporary guardian ad litem (TGAL), who reached the same conclusions as the Court Examiner and suggested removing the Guardian and appointing Charles as guardian, along with an independent attorney to serve as coguardian to assist him.

In the order appealed from, the article 81 court removed the Guardian and appointed an independent attorney as the new guardian (guardian-designee), since Charles has since renounced his interest in being appointed guardian.

The Guardian appealed to this Court and, by motion, sought a stay of the article 81 court's order of removal and appointment of the guardian-designee, pending determination of the Guardian's appeal. This Court granted such a stay on December 3, 2002.

On January 17, 2003, the IP died. Charles moved to dismiss the Guardian's appeal on the ground of mootness, which both the Guardian and guardian-designee opposed, citing the remaining tasks, such as a final accounting, that must still be completed, and this Court denied the motion.

In February 2003, Charles moved to compel a final accounting by the Guardian. Notwithstanding the stay issued by this Court in December 2002 and the pendency of the appeal to this Court, the article 81 court ordered a final accounting to be done not by the Guardian, whose removal had been stayed, but by the guardian-designee as "Guardian Ad Litem," whose appointment had likewise been stayed. The court stated that this relief was justified by, inter alia, "the resistance of [the Guardian] to abide by the [article 81] Court's prior order removing him as Guardian."

On appeal, the Guardian argues that the article 81 court improvidently exercised its discretion in directing his removal and in appointing a non-relative as guardian. We agree. In selecting a guardian for an incompetent person, "the primary concern is for the best interests of the incompetent (*see, e.g., Matter of Kalthoff*, 298 NY 458)" (*Matter of Von Bulow*, 63 NY2d 221, 224 [1984]). Moreover, it has long been held "that 'strangers will not be appointed [guardian] of the person or property of the incompetent, unless it is impossible to find within the family circle, or their nominees, one who is qualified to serve'" (*Matter of Chase*, 264 AD2d 330, 331 [1999], quoting *Matter of Dietz*, 247 App Div 366, 367 [1936]). The established preference for a relative may be overridden by a showing that the proposed guardian-relative has rendered inadequate care to the IP, has interests adverse to the IP or otherwise is unsuitable to exercise the powers necessary to assist the IP (*see* Mental Hygiene Law § 81.19 [a], [d]; *Matter of Rothman*, 263

NY 31, 32-33 [1933]; *Matter of Lopez*, 292 AD2d 231, 232 [2002]; *Matter of Chase*, 264 AD2d at 331), none of which is applicable here.

Although the Guardian's annual reports were filed late, the record establishes that the untimeliness is attributable to the objections of a prior Court Examiner to the format of the reports, and subsequent delays in appointing a new Court Examiner and reassignment of the matter to two additional justices. Where, as here, the IP has not been prejudiced by the lack of strict adherence to the statutory filing deadlines, and the Guardian and his attorney have explained the reasons for the delay, removal is an inappropriate remedy, though the court may consider other remedies, such as ordering compliance or reducing or denying the Guardian's compensation (*see* Mental Hygiene Law § 81.32 [c], [d]).

Nor do we find that the Guardian's accounting errors and disbursements of fees without prior court approval warrant his removal (*see Matter of Chase*, 264 AD2d at 332-333). This was a large estate of approximately $2 million and there is no allegation that these funds were not paid to the appropriate persons due such fees (*see Matter of Robinson*, 272 AD2d 176, 177 [2000] [guardian of IP with large estate would be derelict in his or her duties in not seeking professional financial management advice]). More significantly, the evidence indicates that the Guardian did not seek prior judicial approval of disbursements for legal and investment advisory fees due to the lack of a Court Examiner, and those services ultimately benefitted, rather than harmed, the estate (*see Matter of Chase*, 264 AD2d at 333 [suspicious transfers of IP's assets by co-guardian children were actually to protect IP's estate from former companion]). Moreover, since the IP is now deceased, only a final accounting and other limited matters are left for the Guardian to accomplish.

In light of the ample evidence that the Guardian has been diligent and attentive in protecting the personal and property interests of the IP prior to her death, and since the strong preference for appointing a relative as guardian has not been overcome by a showing that the Guardian is not suitable to exercise the powers necessary to assist the incapacitated person or has a conflict of interest, the order removing the Guardian and appointing the guardian-designee was an improvident exercise of discretion and must be reversed (*see Matter of Von Bulow*, 63 NY2d at 225).

We further note that the article 81 court's appointment of the guardian-designee as guardian ad litem for the purpose of

conducting a final accounting is fundamentally inconsistent with our December 2002 stay order. Accordingly, we direct that this matter be remanded for further proceedings before another justice. Concur—Buckley, P.J., Nardelli, Mazzarelli, Sullivan and Gonzalez, JJ.