Matter of A. J. (2004 NY Slip Op 50016(U))

[*1]

Matter of A. J.

2004 NY Slip Op 50016(U)

Decided on January 5, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 5, 2004

Supreme Court, Kings County
In the Matter of the Application of VERNA EGGLESTON, as Commissioner of Social Services of the City of New York Petitioner, For the Appointment of a Guardian of the Personal Needs and/or Property Management of A. J.[FN1] 
 A Person Alleged to be Incapacitated, Respondent. Proceeding # 1 
 In the Matter of the Application of VERNA EGGLESTON, as Commissioner of Social Services of the City of New York Petitioner, For the Appointment of a Guardian of the Personal Needs and/or Property Management of B. J. 
 A Person Alleged to be Incapacitated, Respondent. Proceeding # 2
Index No. 100236/03

John M. Leventhal, J.
Petitioner, the Commissioner of Social Services of the City of New York, moved pursuant to Article 81 of the Mental Hygiene Law for the appointment of a guardian for the person and property of the respondents. This Court, sua sponte, consolidated these two proceedings for purpose of a joint hearing. The Court closed the courtroom during the joint hearing. This decision explains the Court's reasoning and authority for closing the courtroom.
Respondents are an elderly married couple. They reside with one of their adult sons. The [*2]petitions allege that this son is physically abusive towards his parents and exploits them financially. It is also alleged that the son hoards garbage, permitted the respondents' home to fall into disarray and has refused to allow repairs to be made to the property. Petitioner has also brought a separate proceeding for the appointment of a guardian for the respondents' son.
This Court appointed the same Court Evaluator for all three proceedings. Prior to the initial hearing, the Court Evaluator advised that she had difficulty meeting with and interviewing the respondents as a result of interference by their son. The Court Evaluator was finally able to meet with the parent respondents and various other individuals.
On November 6, 2003 all parties were present for hearings on all three petitions. At that time the Court Evaluator moved to close the courtroom and exclude all but respondents, their attorneys, counsel for petitioner, the Court Evaluator and the doctor. The Court Evaluator also sought redaction of the Court Evaluator's report and sealing of the record. The Court Evaluator maintained that it was her belief that the respondents were fearful of their son and would not be as forthcoming if he were present. The Court Evaluator maintained that she also interviewed individuals who are fearful of retribution by respondents' son if he learned what they had told the evaluator.
Mental Hygiene Law § 81.14( c) permits the Court to exclude individuals including the general public from proceedings "for good cause shown". The statute requires the Court to consider the interest of the public, the orderly administration of justice, the nature of the proceedings and the privacy of the alleged incapacitated persons.
The application of the Court Evaluator was supported by counsel independently retained by the parent respondents as well as the respondents themselves. There were no objections. This Court granted the application. The courtroom was sealed, the record ordered sealed and the evaluator's report redacted. The respondents' son was excluded from his parents' hearing.
The petition in these matters allege serious abuse inflicted upon respondents by their son. The factual reports along with the affidavit of the examining psychiatrist raised concerns of the safety of the respondents. The report of the Court Evaluator contained statements and accounts from individuals intimately close with the respondents. These individuals confirmed that respondents' son is abusive. These individuals, out of fear of retribution, would only speak with the Court Evaluator if she guaranteed that what they told her would not be divulged to the respondents' son.
Certainly, the "orderly and sound administration of justice" dictates that this Court ascertain all information concerning the safety and the living arrangements of the respondents. It is necessary to assist the Court in reaching a proper determination as to whether the respondents are incapacitated and, if so, what actions are necessary to protect them.
The sealing of the proceedings and the closure of the courtroom also allowed the [*3]respondents themselves to speak freely concerning their relationship with their son. Guardianship proceedings under Article 81 of the Mental Hygiene Law are personal and sensitive in nature. When individuals are questioned about matters such as whether and to what extent one of their children may be mistreating them, it is patently proper to close the courtroom to promote candor in search of the truth. (See, The Matter of John Doe, 181 Misc. 2d 787). There is no public or other interest that would be adversely affected by affording these respondents their privacy .
These respondents are entitled to a complete hearing. They are entitled to speak freely without fear of retribution. The Court is entitled to ascertain as much information as possible, before rendering its decision.
This Court finds that the sound administration of justice, the privacy of the respondents and the nature of the proceedings outweigh any public or other interest in keeping these proceedings open. Good cause to seal these proceedings and to close the courtroom to all non parties has been shown.
For those reasons, the Court directed that the hearing be closed except for the parties, the record was sealed, and any information regarding identification of individuals interviewed and what they may have stated redacted from the Court Evaluator's report.
This decision explains the Court's ruling closing the courtroom and sealing the record, namely the court file and transcript of the proceeding.
J. S. C.
Decision Date: January 05, 2004
Footnotes

Footnote 1:The initials of the parties do not correspond to their names to ensure privacy.