■ In the Matter of ELIZABETH WYNN, Appellant-Respondent, for the Appointment of a Guardian for CHARLES WYNN, an Alleged Incapacitated Person. JAMES WYNN, SR.,

Appellant-Respondent; CULVER K. BARR, ESQ., as Court-Appointed Evaluator, et al., Respondents. [783 NYS2d 179]—

Appeal and cross appeal from an order of the Supreme Court, Monroe County (Harold L. Galloway, J.), entered December 2, 2003 in a proceeding of the Mental Hygiene Law article 81. The order granted the petition in part and appointed Lifespan of Greater Rochester, Inc. as the guardian for Charles Wynn.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Petitioner commenced this proceeding seeking, inter alia, a determination that her husband is an incapacitated person (IP) within the meaning of Mental Hygiene Law § 81.02 and seeking to be appointed to serve as his guardian. Petitioner's contention that Supreme Court failed to conduct a "complete" hearing before determining who should be appointed guardian is without merit. Mental Hygiene Law § 81.11 (a) requires a hearing to determine whether appointment of a guardian is necessary (see Matter of Flight, 296 AD2d 845 [2002]) and that hearing was held. The determination who that guardian should be is left to the discretion of the court.

We reject petitioner's further contention that the court erred in appointing a nonrelative to serve as guardian. In selecting a guardian for an IP, "the primary concern is for the best interests of the [IP]" (Matter of Von Bulow, 63 NY2d 221, 224 [1984]). Although preference is given to relatives, a stranger may be appointed if the court determines that a relative is unsuitable (see Matter of Gustafson, 308 AD2d 305, 307-308 [2003]; Matter of Joseph V., 307 AD2d 469, 471 [2003]; Matter of Chase, 264 AD2d 330, 331 [1999]). In this case, there was extreme contention between petitioner and the IP's siblings. Petitioner, who was divorced from the IP for almost 30 years before remarrying him in 2001, accused the IP's brother of stealing money from the IP, and the siblings accused petitioner of the same misconduct. Prior to this proceeding, the IP resided at times with petitioner and at other times with his siblings. Petitioner did not welcome visitation from the siblings while the IP was in her care and strongly opposed the appointment of the IP's brother as guardian, and the siblings did not welcome visitation from petitioner while the IP resided with them and strongly opposed the appointment of petitioner as guardian. Based on this record, the

court properly exercised its discretion in determining that the best interests of the IP would be served by appointing a nonrelative to serve as guardian rather than petitioner or the IP's brother (*see Matter of Lyon,* 52 AD2d 847, 848-849 [1976], *affd* 41 NY2d 1056 [1977]; *Matter of Scurlock,* 90 AD2d 552 [1982]; *Matter of Judas,* 74 AD2d 874 [1980]).

Petitioner's remaining contentions concerning the alleged unconstitutionality of article 81 of the Mental Hygiene Law are not preserved for our review (*see Liffiton v Grossman, Levine & Civiletto,* 100 AD2d 732 [1984]). Finally, contrary to the contention of the IP's brother on his cross appeal, the court properly ordered the guardian to determine whether to continue a lawsuit commenced by the IP prior to commencement of this proceeding. Present—Green, J.P., Pine, Scudder, Martoche and Hayes, JJ.