OPINION OF THE COURT
Gary F. Knobel, J.
The stipulated remaining issues to be determined by the court in this special proceeding pursuant to article 81 of the Mental Hygiene Law for the appointment of a guardian for the person and property of Amelia G., an alleged incapacitated person, are whether the record in this case should be sealed, and whether the court-appointed counsel for Amelia G. should continue in that capacity after the entry of the order and judgment. For the reasons stated below, the application by cross-petitioner Denise B. Caminite for an order sealing the record in this guardianship proceeding is denied, and the application for an order continuing the representation of Amelia G. by court-appointed counsel, Michael Chetkof, Esq., is granted.
Guardianship proceedings are unique and different from most other forms of litigation since the respondent, the individual haled into court against their will because she or he is alleged to be “incapacitated,” is not accused of wrongdoing or fault. Instead, even though the person alleged to be incapacitated has not put their medical or psychiatric condition into is *722 sue nor waived their physician-patient privilege (see Matter of Rosa B.-S. [William M.B.], 1 AD3d 355 [2003]), the petitioner claims that the respondent is suffering from either a disease, illness, condition or injury which significantly impairs her or his ability to care for their needs, and thus it is necessary to appoint a guardian with extensive powers to prevent harm to that individual. Consequently, since the respondent can lose her or his civil liberties guaranteed by the United States and New York State Constitutions, article 81 of the Mental Hygiene Law was designed to be an adversarial process, not a collaborative or mediative one, in an effort to protect the respondent’s liberty interests. The statute presumes that the individual is not incapacitated until proved so by the highest standard of proof, clear and convincing evidence. Article 81 therefore gives a person the opportunity to fight against and object to the deprivation of their freedom and right to make their own decisions and conduct their life the way they see fit.
The tragic reality is that the majority of respondents have significant functional limitations, usually neurological, due to dementia or Alzheimer’s disease, which severely impair their ability to manage their lives or express their needs and wishes. Who will speak on behalf of these vulnerable individuals of our society least able to care for themselves and protect themselves from identity theft or financial exploitation, many of whom do not have family members or friends to care or advocate for them? What would they have said—if they were not cognitively impaired—about the public having access to their medical, psychiatric and financial information?
Requests to this court by litigants, attorneys and court-appointees to seal the record in their particular case have occurred with greater frequency as a result of the publicity generated by stories which have appeared within the past year in Newsday, Long Island’s daily newspaper.[1] Although guardianship proceedings are open to the public to observe, many article 81 practitioners assume that all county clerk guardianship case files are sealed and shielded from public view in the same manner that documents in matrimonial cases are prohibited from disclosure to anyone other than the parties, their attorneys and court personnel (see Domestic Relations Law § 235 *723 [1]; Judiciary Law § 4; Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C235:l at 522-524 [2010 ed]). This is possibly due in part to the fact that Mental Hygiene Law § 81.07 (f) limits the service of the petition to only the alleged incapacitated person, his or her attorney, and the court evaluator, and that interested parties are only entitled to be served with a copy of the order to show cause.
Whenever the sealing of a court record is sought pursuant to statute or court rule, competing constitutional rights are pitted against each other: the public’s right to information and access to court proceedings, versus the individual’s right to privacy.
A recent survey conducted by the American Bar Association Commission on Law and Aging indicates that as of December 31, 2016, nine states seal significant portions of records in guardianship cases (e.g., the petition, professional evaluation reports) and that 13 states (e.g., New Jersey, Connecticut, Ohio, Kentucky, Oklahoma, New Hampshire) mandate that guardianship hearings be confidential, the documents contained therein be sealed, and public access to those records granted only upon good cause shown (ABA Commission on Law and Aging, www.americanbar.org/aging).[2]
New York, along with the majority of states, mandates the inverse: public access to documents in guardianship proceedings is presumptively permitted, unless a litigant sufficiently demonstrates to the court “good cause” why the record should be sealed in accordance with Mental Hygiene Law § 81.14. The statute was enacted in 1993, three years prior to the enactment by Congress in 1996 of the Federal Health Insurance Portability and Accountability Act, hereinafter HIPAA (42 USC § 1320d et seq.), which prohibited, inter alia, the disclosure of a patient’s medical information unless it was authorized by the patient or by a court order (Matter of Miguel M. [Barron], 17 NY3d 37, 43 [2011]). Mental Hygiene Law § 81.14 mandates, in pertinent part with respect to the sealing issue at bar, that
“(a) A record of the proceedings shall be made in all cases.
*724 “(b) The court shall not enter an order sealing the court records in a proceeding under this article, either in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interest of the public, the orderly and sound administration of justice, the nature of the proceedings, and the privacy of the person alleged to be incapacitated. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard. Court records shall include all documents and records of any nature filed with the clerk in connection with the proceeding. Documents obtained through disclosure and not filed with the clerk shall remain subject to protective orders under the civil practice law and rules . . .
“(d) At the time of the commencement of the hearing, the court shall inform the allegedly incapacitated person of his or her right to request for good cause that the court records be sealed and that a person, persons, or the general public be excluded from the hearing.” (Mental Hygiene Law § 81.14 [a], [b], [d] [emphasis added].)
There does not appear to be any published legislative history or legislative discussion pertaining to Mental Hygiene Law § 81.14, nor does there appear to have been any public discourse on whether court records in guardianship cases should be sealed, other than the Newsday articles bringing the issue to the forefront and the views expressed therein by the reporter and the individuals selected to be interviewed therein. Mental Hygiene Law § 81.14 (b) tracks the statewide administrative court rule pertaining to non-article 81 cases that was promulgated by the Chief Administrative Judge in 1991, two years earlier than when section 81.14 was enacted into law, in response to concerns that judges were sealing court records based upon agreements between the parties (see Mancheski v Gabelli Group Capital Partners, 39 AD3d 499, 501 [2007]). Although both statute and rule permit the sealing of the record only upon a written finding of good cause, the differences between them are that the court rule requires the trial judge to “consider the interests of the public as well as of the parties” (22 NYCRR 216.1 [a]), while section 81.14 (b) mandates three additional factors that the court must consider in determining *725 whether “good cause” has been established: “the orderly and sound administration of justice, the nature of the proceedings, and the privacy of the person alleged to be incapacitated” (Mental Hygiene Law § 81.14 [b]).
There are no appellate cases in New York which consider and apply the criteria set forth in section 81.14 to seal the record or exclude the public from observing a guardianship proceeding. There are only a few published trial court decisions arising from New York guardianship proceedings which evaluate whether “good cause” has been demonstrated to seal the court file in whole or in part in a particular case pursuant to Mental Hygiene Law § 81.14 (b). The privacy factor has served as the predominant reason judges in guardianship cases have sealed court records. For example, Justice Leventhal, before he was elevated to the Appellate Division, Second Department, stated in Matter of A. J. (1 Misc 3d 910[A], 2004 NY Slip Op 50016 [U] [2004]) that “[g]uardianship proceedings under Article 81 of the Mental Hygiene Law are personal and sensitive in nature . . . .” “The sealing of the proceedings and the closure of the courtroom . . . allowed the [elderly married persons alleged to be incapacitated] to speak freely concerning their relationship with their son . . . [and] to promote candor in search of the truth” (Matter of A. J., 1 Misc 3d 910 [A], 2004 NY Slip Op 50016[U], *2-3 [Sup Ct, Kings County 2004]). In Matter of Doe (181 Misc 2d 787, 794 [1999]), Justice Rossetti (of this court) held in sealing that record that
“disclosure of confidential medical and treatment information would be potentially embarrassing and damaging to respondent, particularly with respect to his relationship with his parents and further treatment of his problems (including his alcohol and substance abuse [cf., 42 CFR ch I, subch A, part 2]) . . . [, and that] there was no indicated public or other interest in disclosure of these essentially personal proceedings outweighing such potential injury” (Matter of Doe, 181 Misc 2d 787, 794 [Sup Ct, Nassau County 1999] [citations omitted]).
Similarly, Justice Guy in Matter of Linda E. (Justin B.) (55 Misc 3d 700 [2017]) excluded members of the public and the Tompkins County District Attorney’s Office from the courtroom and sealed the record to protect the alleged incapacitated person’s medical privacy rights and liberty interests in view of pending criminal proceedings against him (Matter of Linda E. *726 [Justin B.], 55 Misc 3d 700, 702-703 [Sup Ct, Tompkins County 2017]; see also Matter of Astor, 13 Misc 3d 1203[A], 2006 NY Slip Op 51677[U] [Sup Ct, NY County 2006]).
Sealing court records for compelling reasons and in the fair administration of justice is an exception to the strong preference by our state legislature and courts and federal courts for the public to have access to the courts and its proceedings (see Mancheski v Gabelli Group Capital Partners; Anonymous v Anonymous, 263 AD2d 341, 342 [2000]). In the watershed United States Supreme Court case of Richmond Newspapers, Inc. v Virginia (448 US 555 [1980]), Chief Justice Burger explained that this public policy has its roots in English jurisprudence, centuries before the ratification of the United States Constitution, “that all judicial trials are held in open court, to which the public [shall] have free access” (Richmond Newspapers, Inc. v Virginia, 448 US 555, 566-567 [1980, Burger, Ch. J.], quoting E. Jenks, The Book of English Law 73-74 [6th ed 1967]). In explaining “the presumptive openness of the trial,” especially the criminal trial, Chief Justice Burger observed that “public trials had significant community therapeutic value . . . [since] the means used to achieve justice must have the support derived from public acceptance of both the process and its results” (id. at 567, 570-571). Against the backdrop of this long history, the Court concluded that the freedoms and guarantees imbedded in the First and Fourteenth Amendments to the United States Constitution implicitly granted to the public the right to attend criminal trials, since these “freedoms share a common core purpose of assuring freedom of communication on matters relating to the functioning of government” (id. at 575, 580). This right of access to the courts and to receive information under governmental control helps “to ensure the actual and perceived fairness of the judicial system” (Mancheski v Gabelli Group Capital Partners at 501).
The proceeding at bar presents an unfortunate but typical situation: the court cannot accurately ascertain the wishes of the alleged incapacitated person because she suffers from a severe cognitive impairment. Fortunately, she is well cared for 24 hours per day. Other than the proposed co-guardian and cross-petitioner, Denise B. Caminite, who is not related to the incapacitated person, the court evaluator, court-appointed counsel, the temporary guardian and the petitioners all maintain that there is no basis to seal the record in this proceeding. In view of the existing public policy strongly favoring the public’s ac *727 cess to court files, and after applying the criteria set forth in Mental Hygiene Law § 81.14 (b), this court concludes that Ms. Caminite has failed to sufficiently demonstrate good cause to warrant the sealing of the record here. The serious allegations in the petition, though merely allegations and never the subject of a hearing, pertain to possible wrongdoing, financial exploitation and overreaching, Svengali-like manipulation and control over a vulnerable very wealthy elderly incapacitated person whose real estate holding is worth tens of millions of dollars, and are precisely the examples set forth in arguments that favor public scrutiny of guardianship proceedings. “[T]he bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud” (Mancheski v Gabelli Group Capital Partners at 501, quoting Republic of Philippines v Westinghouse Elec. Corp., 949 F2d 653, 660 [1991]). Indeed, sealing the record here would have the effect of burying secrets, hiding the truth and thwarting the best interests of the incapacitated person to be protected from unscrupulous behavior.
The public interest here clearly outweighs the private interests of the parties as Ms. Caminite has failed to demonstrate that public access to the court documents filed in this proceeding would likely result in harm to a compelling interest of the movant (see Mancheski v Gabelli Group Capital Partners at 502). Moreover, in considering whether to seal the record in a guardianship proceeding, the privacy rights of, and the best interests of, the alleged incapacitated are paramount, and not the interests or privacy rights of other litigants (see Matter of Linda E. [Justin B.] at 702-703). Although the legislature should reevaluate Mental Hygiene Law § 81.14 in view of the broad impact of HIPAA on guardianship proceedings, the unfortunate ease of international identity theft, and the number of sister states which presumptively seal court records in guardianship proceedings, good cause has not been established to seal the record here.
The court further finds that it is in the best interests of the incapacitated person for the court to continue to monitor the management of her complicated large real property asset, as well as her personal needs. Consequently the court sets this case down for a status conference on November 9, 2017, at 10:00 a.m., and reappoints Michael Chetkof, Esq., to continue in his representation of the incapacitated person.

. See e.g. Will Van Sant, Signed, Sealed and Secret: Guardianship Cases Often Sealed, Preventing Public Scrutiny, Newsday, Oct. 3, 2016, § A at 2, col 1; Will Van Sant, NY County Clerks Told to Flag Orders That Could Hide Cases, Newsday, Mar. 14, 2017, § A at 5, col 1.

. The Uniform Guardianship and Protective Proceedings Act, adopted by 43 states, including New York, technically requires only reports and professional evaluations to be sealed, but may be revealed to the respondent, the petitioner and their attorneys, and pursuant to court order, those showing good cause (Uniform Guardianship and Protective Proceedings Act §§ 307 [l]-[4]; 407 [l]-[4]).