Matter of Corinne S. (Steven S.) (2023 NY Slip Op 51443(U))

[*1]

Matter of Corinne S. (Steven S.)

2023 NY Slip Op 51443(U)

Decided on December 31, 2023

Supreme Court, Nassau County

Knobel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 31, 2023
Supreme Court, Nassau County

In the Matter of the Application of Corinne S., Petitioner, 
 for the Appointment of a Guardian for Steven S., Respondent, an Alleged Incapacitated Person, and SHELLY F., and GRACE S., Cross-Petitioners.

Index No. 850081-I-2022

John G. Farinacci -Counsel to Corrine S. (Petitioner)
Ruskin Moscou Faltischek, PC
1425 RXR Plaza FL East
Uniondale, NY 11556 (516) 663-6628
jfarinacci@rmfpc.com

Grace S. - Pro Se Cross Petitioner 
Robert M. Harper - Counsel to Shelly S. Fink (cross petitioner) 
Farrell Fritz, P.C.
400 RXR Plaza 4th Floor West Tower
Uniondale, NY 11554
(516) 227-0625
rharper@farrellfritz.com
Bret Cahn - Counsel to Shelly S. Fink (cross petitioner) 
Farrell Fritz, P.C.
622 3rd Avenue Ste 37200
New York, NY 10017
(646) 237-1809
bcahn@farrellfritz.com
Sarah A. Chussler - Counsel to Steven S.(Alleged Incapacitated Person)
Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042 (516) 592-5857
schussler@abramslaw.com
Ariella T. Gasner - Court Evaluator
Salem, Shor & Saperstein
3000 Marcus Avenue, Suite 1W6
Lake Success, NY 11042
(516) 472-7030
Ariella.gasner@gmail.com
John Newman - Temporary Guardian
John Newman, Esq.
6268 Jericho Turnpike, Suite 7
Commack, NY 11725
(631) 486-7802
jnewesq@gmail.com
Seth D. Kaufman -Labor Law appointed Counsel to Steven S. (AIP)
Fisher & Phillips, LLP
7 Times Square Suite 4300
New York, NY 10036
(212) 899-9975
skaufman@fisherphillips.com
Hon. Anthony F. Marano - Temporary Receiver 
Anthony Marano Esq. PO Box 423
Malverne, NY 11565
(646) 745-7596
anthonymarano@icloud.com
Thomas McNamara - Counsel to Temporary Receiver
Certilman Balin Adler & Hyman, LLP
90 Merick Avenue, 9th Floor
East Meadow, NY 11554
(516) 296-7057
tmcnamara@certilanbalin.com
Aytan Bellin - Counsel to Grace S. (Cross-Petitioner)
Katsky Korins LLP
605 3rd Avenue, Floor 17
New York, NY 10158
(212) 953-6000
abellin@katskykorins.com

Gary F. Knobel, J.

Papers Considered
Petitioner Corinne S.'s Memorandum of Law 1
Cross-Petitioner Shelly F.'s Memorandum of Law 2
Cross-Petitioner Grace S.'s Memorandum of Law 3
Counsel to Steven S.'s Memorandum of Law 4
Trial Transcripts 5
Evidence 6
Court Evaluator's Reports 7
"Justice is the only meaningful goal in the resolution of any lawsuit. The law may not always be just, but it does provide a path to justice" (Estate of Kainer v UBS AG, 37 NY3d 460 at 468 [Fahey, J., dissenting] [2021]).
The path to justice has been arduous in this highly contested and complicated proceeding pursuant to Article 81 of the Mental Hygiene Law for the appointment of a guardian, or guardians, for the personal needs and property management of 79 year-old Steven S., an alleged incapacitated person. After 17 trial days spread out over several months, numerous conferences and seven controverted motions,[FN1]
the last contested issue is whether the best interests of Steven S. require that a family member  petitioner Corinne S., a daughter of Steven S. and a resident of California, or cross-petitioner [FN2]
Grace S., the estranged third wife of Steven S., who resides in Seattle, Washington,  or a neutral third-party on the Part 36 guardian fiduciary list- be appointed as a guardian for Steven S. Cross-petitioner Shelly F., a daughter of Steven S. who resides in Israel, advocated for an independent guardian to be appointed and did not want either Corinne or Grace be appointed as the guardian for her father. Corinne traveled to New York for [*2]almost all of the trial and conference court appearances, while Grace and Shelly participated via Microsoft Teams.
The three petitioners symbolically represent three different periods in Steven S.'s life and reflect the difficulty in fulfilling Steven S.'s wish (expressed in his video will) that one day, after he was no longer alive, the discord and distrust between the petitioners and their three different families could be blended into one functional family that would unite at his home occasionally and be friendly with each other. Ironically, their individual, meritorious petitions at bar contributed to the intervention and prevention by this Court of any further wasteful dissipation of Steven S.'s assets, and the purported elder abuse and financial exploitation by Steven S.'s former business partner and former cross-petitioner, Mark Wysocki. 
In his heyday Steven was a savvy, successful real estate investor with his sister. Steven S. intentionally did not have the petitioner and cross-petitioners involved in his real estate businesses and holdings in any manner. Steven proverbially marched to the beat of his own drummer. Steven enjoyed being a global gallavanter, a promiscuous philanderer who had inter alia four children with three wives, and a 12-year affair in China with cross-petitioner wife Grace S.'s cousin. He was not your traditional father or husband.
The depth and quality of the petitioner's and cross-petitioners' individual relationships with Steven S. is difficult to assess since Steven, although he appeared at the beginning of the trial, never testified. However, the evidence proffered at trial revealed that he was adamant that he did not want his daughter Corinne, or his estranged wife Grace, to be appointed as his guardian. The petitioners would occasionally visit with Steven and they apparently care to some degree, but his relationships with them did not appear to be very close or warm and fuzzy. Interestingly, there were very few tears shed by the petitioners during their respective testimonies about Steven S.'s deteriorated physical and mental condition, nor did the petitioners specifically express any feelings of love for Steven. Perhaps this is what Bob Dylan meant when he wrote the lyric popularized in a song by Joan Baez, that "love is just a four-letter word."[FN3]

An abbreviated procedural history is set forth as follows:
At the inception of the proceeding at bar this Court suspended the power of attorney and health care proxy allegedly executed by Steven S., and appointed a temporary guardian, a court evaluator, and an attorney to represent Steven S., because of the averred allegations that Steven S. was suffering from cognitive deficits as a result of a stroke and was the victim of financial improprieties, poor business judgment, financial exploitation and undue influence allegedly perpetrated by former cross-petitioner Wysocki, a business associate of Steven S. Shortly thereafter, this Court appointed labor counsel to represent the temporary guardian in federal court in New Jersey to protect Steven S.'s ownership interest in Arbah Corp., a non-operational and dilapidated hotel; Wysocki had been held in contempt for the non-payment of wages to hotel employees. The temporary guardian subsequently made an application to this Court for the appointment of a temporary receiver to manage and preserve Steven S.'s businesses in view of inter alia Wysocki's failure to turn over the proceeds and the documentation pertaining to the sale of one of the properties owned by Steven S./ 52 West Associates LLC for $33,000,000.00 million dollars, and the failure to sell that property in accordance with Internal Revenue Code §1031 and save millions of dollars in taxes. That motion was granted. Two years prior to the [*3]sale of this valuable property, on May 20, 2022, Steven S. allegedly transferred or gifted to Wysocki 15 per cent of his 100 per cent interest in Arbah Corp. and 52 West Associates LLC. However, both the court evaluator and the temporary guardian, based upon evidence reviewed in camera by the Court, contended that Steven S. may not have had capacity when he executed the documents transferring his interests in those corporations.
Prior to the commencement of the trial, this Court ordered that the trial would be conducted in four phases. At the conclusion of the first phase—whether a guardian should appointed for Steven S.—this Court orally found on the record that the petitioner and cross-petitioners Grace and Shelly established by clear and convincing evidence that (1) a guardian is necessary to provide for the personal needs, including food, clothing, shelter and health care, of Steven S., and manage his property and financial affairs; (2) Steven S. does not adequately understand and appreciate the nature and consequences of his limited abilities, and if a guardian is not appointed for him, he is likely to suffer harm because he is unable to provide for both his personal and property management needs; and (3) Steven S. is an incapacitated person as defined by Mental Hygiene Law § 81.02 (see, Matter of Joan A.C. (Debra A.C.—Irene R.), 217 AD3d 941, 942; Matter of Carolyn S. (Gaylor), 192 AD3d 1114, 1115; Matter of Dorothy K.F. (Michael F.—Stephenie F.), 145 AD3d 887, 888; Matter of Loftman (Mae R.), 123 AD3d 1034, 1035-1036; Mental Hygiene Law §§ 81.02 [a][1],[2],[b][1],[2]). Before the next phase of the trial, Wysocki filed in the United States Bankruptcy Court in Newark, New Jersey, as a purported fifteen per cent owner of Arbah Corp., a bankruptcy petition on behalf of Arbah Corp. The proceeding at bar was not stayed since Arbah Corp. was not a party in this case. This Court was required to then appoint and approve separate bankruptcy counsel for the temporary guardian and the temporary receiver to properly protect Steven S.'s interest in Arbah Corp.
The second and third phases of the trial concerned whether cross-petitioner Wysocki breached his fiduciary duty on behalf of Steven S., and whether Steven S. had capacity (a)when he allegedly conferred upon Wysocki a power of attorney in May 2020, (b)when he allegedly transferred to Wysocki fifteen percent (15%) of his businesses, (c) when he sold the Florida property in 2021, and (d) when 52 West Associates LLC sold that the New York County property. However, before Wysocki was scheduled to cross the proverbial Rubicon and testify and answer questions on those issues, a comprehensive settlement agreement between Wysocki and the parties was reached, which this Court approved (see order dated July 20, 2023, Knobel, J.). As a part of the settlement agreement, cross-petitioner Wysocki withdrew his petition seeking to be guardian, and any power of attorney and health care proxy were revoked. Thereafter, the final phase of the trial began on the issue of the most appropriate individual, or individuals, to be appointed to serve as the guardian of Steven S. for his personal and property management needs.
"In selecting a guardian for an incapacitated person, the primary concern [for the Court] is the best interests of the incapacitated person" (Matter of Audrey D., 48 AD3d 806, 807, 853 NYS2d 143 [2008]; see Matter of Von Bulow, 62 NY2d 221, 224, 470 N.E.2d 866, 481 N.Y.S.2d 67 [1984]); (Matter of Marilyn A.I. [Kevin D], 106 AD3d 821, 822, 964 N.Y.S.2d 640 [2013]). This determination involves the judgement of the facts and discretion of the court (Matter of Von Bulow, supra). "While appointment of a family member is preferable, it is well within the Supreme Court's discretion to appoint an outsider upon a determination that the available family member is, in some way, not suitable" (Matter of Audrey D., supra at 807). Moreover, when there is dissension between family members, a court is justified in appointment of a neutral [*4]third-party guardian (see Matter of Dorothy K.F. [Michael F.-Stephanie F.], 145 AD3d 887, 888, 44 N.Y.S.3d 98; Matter of Beatrice R.H. [Dean E.H.-Penny F.H.], 131 AD3d 1058, 1059, 16 N.Y.S.3d 474 Matter of Joshua H., 62 AD3d 795, 796; Matter of Wynn, 11 AD3d 1014, 1015-1016, 783 N.Y.S.2d 179 [2004]).
In applying these principles to the evidence adduced at trial, this Court finds, for the reasons explained below, that the most appropriate person to serve as the guardian of the personal and property management needs of Steven S., is a neutral, independent person on the Part 36 Fiduciary list, the current temporary guardian, John Newman, Esq. (see Matter of Joan A.C. (Debra A.C.—Irene R.), 217 AD3d 941, 943; Matter of Dorothy K.F. [Michael F.-Stephanie F.], 145 AD3d 887, 888, 44 N.Y.S.3d 98; Matter of Beatrice R.H. [Dean E.H.-Penny F.H.], 131 AD3d 1058, 1059, 16 N.Y.S.3d 474; Matter of Ollie D., 30 AD3d 599, 600, 817 N.Y.S.2d 142). This finding by the Court should not be interpreted by petitioner daughter Corinne S. or cross-petitioner wife Grace S. that they "lost." A guardianship proceeding is unlike any other civil proceeding since the alleged incapacitated person is not accused of wrongdoing or fault, yet his or her civil liberties may be taken away in whole or in part (see, Matter of Caminite (Amelia G.), 57 Misc 3d 720, 721-722, 62 N.Y.S.3d 724, 725-726 [County Court, Nassau Co., 2017]). If a guardian needs to be appointed by the court, the paramount concern determining what is in the best interests of the most vulnerable person in our society—the incapacitated person (Matter of Kristine F, 206 AD3d 729,730, 167 NYS3d 810 [2nd Dept. 2023]).
Petitioner Corinne can take solace in the fact that if it were not for her petition, her father would probably have millions of dollars less in his possession, due to the purported misappropriation and mismanagement by former business associate Wysocki, than the millions of dollars more he now possesses thanks to the efforts of the temporary receiver and temporary guardian appointed by this Court. The Court does not doubt that Corinne sincerely wants to do what she believes is in the best interest for her father, but unfortunately her beliefs and plans for him and his property assets do not coincide with what is in her 79 year-old father's best interests.
Corinne is a very confident 33-year old mother, Los Angelino and custodian of two young children from different men, one of whom was responsible for her losing a residential property she owned in Florida which was worth over $500,000.00 [FN4]
(testimony of Corinne S., July 25, 2023, at 10, 18, 32, 44, 49, 65-93; Exhibits 31, 32). She has never been married. Corinne was sent to boarding school in Europe for her high school years, and has not graduated from college. She has no plans to complete her bachelor's degree "because it is not going to help me get a job. I know exactly what I'm doing for the rest of my life. I'm killing it, I'm connected, I'm powerful, I'm beautiful" (testimony of Corinne S., July 26, 2023, at 34). Corrine views herself as "a professional" and as "a leader" who is "on [call] 24 hours a day" to manage her household and help her friends and children (testimony of Corinne S., July 26, 2023, at 64, 107). She is not formally employed, apparently living off of a trust fund established by her maternal grandfather in a $30,000.00 per month home rental, but she claims that one day she would like to be a licensed stockbroker (like her mother, Steven S's second wife, who now resides in Dubai) and manage the portfolios of "the biggest names out there" (testimony of Corinne S., July 26, [*5]2023, at 84).
Corinne misconstrues the fiduciary obligations for which the guardian is responsible. Her vision as guardian appears to be that she would be the chief executive officer over her father and have teams carry out her directives. Corinne testified that if she was appointed as the guardian for Steven she would relocate to New York with her children and have them home schooled. Her plan to take care of her father's personal needs includes having a house manager/caretaker who would reside in New Jersey while overseeing the care of Steven S. with an entirely new staff. Corinne also testified that she would have her father undergo an unproven noninvasive procedure she identified as "red light therapy" to improve his cognitive function. Corinne further testified that she knows better than the current doctors and professionals treating her father if they do not come from the same circles that she engages in (testimony of Corinne S., July 26, 2023, at 66-69). Corinne honestly admitted that she may have difficulty following orders from the Court or advice of professionals appointed by the Court if the orders or recommendations are not what she believes is in her father's best interest (id. at 54-70). Perhaps the most fantastical idea she has pertains to her potential role as property guardian, where she would be a venture capitalist with her father's assets, such as renovating the New Jersey hotel he owned at a cost of over $17,000,000.00 (testimony of Corrine S., July 26, 2023, at 66-67; see order September 8, 2023 [Knobel, J.]).
Cross-petitioner Grace S. testified that she is also willing to relocate back to New York if she is appointed to be Steven S.'s guardian. Grace is Steven S.'s third wife. They were married in 2001 and have been separated since 2008, when Grace and Stevie, Grace and Steven S.'s son, moved to Washington state. Grace was employed as a tutor and then subsequently opened her own private tutoring school. During their marriage Steven S. has purchased multiple real estate investments for Grace, four of which included apartments in Shanghai, China. Grace has, on occasion, sold some of the apartments to support her and her son's lifestyle, using the funds to purchase a home in Washington.
Grace and Steven S. entered into an antenuptial agreement in 2001. This agreement creates a significant conflict of interest preventing Grace from serving as guardian. Article II subsection "h" states "[i]n the event the 'Prospective Husband' and the 'Prospective Wife' shall be separated [emphasis added], then in such event, "Prospective Wife' and the 'Prospective Husband' shall sell the said apartment and split the net proceeds on a fifty-fifty basis." (see Exhibit 38; testimony of Grace S., September 19, 2023, at 131-138). Separated is not defined in the agreement, creating an issue that the guardian would need to investigate. Furthermore, Grace S. and Steven S. have had numerous martial disputes ranging from divorce filings to threats of divorce (see Exhibit 10, 39-40). Grace has also stated she would only relocate to New York if she was appointed as guardian, reasoning that ". . . if I'm not the guardian he doesn't need my support. He needs my love. I can go visit him . . . . If I'm not appointed to be the guardian I will be here [in Washington state] for my students more" (testimony of Grace S., September 18, 2023, at 36-37, 55-56; testimony of Grace S., September 19, 2023, at 124-129). The conflict of interest between Grace and Steven S. as well as the marital issues between them and Grace's non-commitment to relocation to New York prevents the Court from appointing Grace S. as guardian for Steven S.
The general public policy in preferring that a family member be appointed as the guardian for the incapacitated person is based upon a presumption that the incapacitated person will be more comfortable with that person rather than a stranger, and that the family member will [*6]be more caring and be more involved in the day-to-day life of the incapacitated person. However, that is not necessarily so. Here neither Corinne nor Grace made any attempt to relocate to New York after Steven S.'s stroke in 2020, or even in 2023 during the pendency of this proceeding. That is perfectly understandable since they have followed their own separate paths and created lives for themselves in Los Angeles and Washington state, having very little to do with Steven S. It strains credulity that they would actually relocate to New York if either one was appointed as guardian; it is also not realistic. A more likely scenario which would occur if either one was appointed guardian would be to request that Steven S. be permitted to move out west and reside with them in their respective residences.
The bitter dissension and resentment between Corinne and Grace is another reason why neither person would be an appropriate guardian for Steven S. Corinne has accused Grace of knowing about the financial fraud and abuse which allegedly took place by Wysocki and consequently, according to Corinne, Grace "loses the right to be involved in this," Grace doesn't "deserve[] any involvement in [Steven S.'s] personal care and his business", and that "she [Grace] hit the jackpot" with Steven S. (testimony of Corinne S., July 26, 2023, at 61-62; 97-100, 124-127, 137-139; see also testimony of Corinne S., July 25, 2023, at 21).
In addition to this Court's assessment and analysis, it is important to note that counsel for cross-petitioner Shelly F., counsel to Steven S., and the court evaluator, Ariella Gasner, have all advocated for the appointment of an independent, neutral guardian, and have acknowledged is Steven S.'s desire, through his assigned counsel and the court evaluator, not to have a guardian, but if he was required to have one he did not want any family member to be his guardian. The court evaluator's testimony, and extremely thorough investigation and comprehensive interviews she conducted, completely support her recommendations. Furthermore, the evidence contained within the addendum to the court evaluator's report clearly demonstrates why Steven S. has consistently expressed his preference that no family member be in control over his life. In Steven S.'s video will, recorded on May 12, 2013, well before he suffered any strokes or known mental deficiencies, Steven S. clearly outlined the familial conflicts and his desires. He never wanted any of his immediate family members to have control over any of his financial or personal interests. Steven would like his fragmented family to get along and be happy but, as he stated, this is "something that I did not experience in my life" and there was always some sort of "conflict, jealousy or complaints" (addendum to court evaluator's report, dated September 20, 2023). Steven S.'s objection to having the petitioners involved in his personal and business matters has consistently been displayed through his actions, including: (1) his 2013 video will; (2) the 2014 power of attorney he executed; (3) his interviews with the court evaluator; (4) the testimony of witnesses throughout the trial; and (5) the actions he took with his company and with those whom he employed.
This Court further notes that the court evaluator testified that Steven S. likes John Newman, the temporary guardian of Steven S. since August 4, 2022, and would like Mr. Newman to continue in that capacity if he needed a guardian (testimony of Ariela Gasner, September 20, 2023, at 200-204). Corinne testified that she is satisfied with Mr. Newman's performance as guardian (testimony of Corinne S., July 25, 2023, at 29-30). 
Given the conflict that has riddled the family dynamic, and the fact that the family members who wish to be the guardian for Steven S. reside at least 2500 miles from New York, and in view of the recommendation of the court evaluator and the complexity of Steven S.'s businesses, this Court finds that it is in Steven S.'s best interests to appoint, for an indefinite [*7]period of time, John Newman Esq. as the independent guardian for the personal and property management needs of Steven S. Mr. Newman has extensive knowledge of this proceeding and Steven S.'s personal and business needs, and is one of the elite elder and guardianship law practitioners in New York State. This Court is confident that Mr. Newman will continue to execute his fiduciary obligations in a professional and compassionate manner and follow the advice of medical, legal, or financial experts. 
Turning now to the issue of reasonable compensation for the court appointees and the attorneys who represented the petitioners, this court has reviewed and scrutinized all the fee requests by the court appointees and respective counsel for the petitioners in in this proceeding for the services they provided in 2022 and 2023. The following awards shall be paid from the guardianship account for the reasons stated below:
The Court of Appeals in Matter of Freeman, 34 NY2d 1 [1974], reiterated the factors the trial court must apply before it awards reasonable counsel fees:
Long tradition and just about a universal one in American practice is for the fixation of lawyers' fees to be determined on the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved" (Matter of Freeman, 34 NY2d 1, 9, 311 NE2d 480, 355 NYS2d 336 [1974]).
The Supreme Court has broad discretion in determining, in a guardianship proceeding pursuant to article 81 of the Mental Hygiene Law, the reasonable amount to award to court appointees; however, it must provide a clear and concise explanation for its award in a written decision, with reference to the above-listed factors (see Matter of Zofia L. [Jolanta S.—Bogdan L.], 136 AD3d 818, 821, 26 N.Y.S3d 95 [2nd Dep't 2016]; Matter of Alice D. [Lupoli], 113 AD3d 609, 979 N.Y.S.2d 77 [2nd Dep't 2014]; Matter of Marion C.W. [Lisa K.—Maguire], 83 AD3d 1089, 1090, 923 N.Y.S.2d 558 [2nd Dep't 2011]; Matter of Theodore T. [Charles T.], 78 AD3d 955, 957, 912 N.Y.S.2d 72 [2nd Dep't 2010]; Matter of Catherine K., 22 AD3d 850, 803 N.Y.S.2d 193 [2nd Dep't 2005]).
With respect to the fee applications at bar, the highest average hourly rate this Court will award is $600.00 per hour as a fair and reasonable hourly rate based upon the high quality of their work and the rate charged by the top tier practitioners in the guardianship field with extensive years of experience. Other court appointees in this matter previously received similar compensation, including Thomas McNamara, Esq., counsel to the temporary receiver, who has been engaged in complex bankruptcy issues (see NYSCEF Doc. 350 [awarding Mr. McNamara $585.00 per hour]; NYSCEF Doc 301, 320 [awarding Mr. Newman, the temporary guardian, $500.00 per hour]). 
The temporary receiver, the temporary guardian, the court evaluator, court appointed counsel for Steven S., and the attorneys for the petitioner and cross-petitioners were individually and collectively instrumental in preventing the further siphoning of millions of dollars from Steven S.'s assets, as well as any further financial abuse and undue influence over Steven S. Through all of their diligent efforts they were able to reach a resolution which ensured that Steven S. technically retained full control over all his businesses (instead of 85%), and the alleged financial abuser waived all claims to any present or future interests in Steven S.'s affairs, [*8]including any testamentary gifts. This settlement by itself preserved millions of dollars and years of litigation. To achieve this remarkable accomplishment, extensive negotiations, legal research, motion practice, and aggressive pre-trial and trial advocacy were required to be performed since the petition at bar was filed in June 2022. This was not an ordinary Article 81 guardianship proceeding. Nearly every week there was a surprising turn of events which impacted the Steven S.'s businesses and properties, such as the bankruptcy filing of the Arbah Corporation in New Jersey, the labor dispute it was involved in, the complications and delays created by the repetitive substitution of counsel by former cross-petitioner Wysocki, and the presentation to this Court of multiple legal issues of apparent first impression.
Ariella Gasner, Esq., the Court Evaluator, is awarded the reasonable sum of $222,780.00 for 371.3 hours of professional services and $593.70 for disbursements (see NYSCEF Doc. 357). Ms. Gasner has practiced law since 2010, and is a partner at Salem, Shor, & Saperstein, focusing on trusts and estates and elder law and guardianship litigation. She is a member of the New York State Bar Association and the Nassau County Bar Association, and served as co-chair from 2021-2022, and chair from 2022-2023, of the Nassau County Bar Association Elder Law, Social Services & Health Advocacy Committee. Ms. Gasner has appeared before this Court on several occasions and is a very experienced guardianship attorney. Ms. Gasner compiled the most thorough and in-depth court evaluator's report this Court has received and admitted into evidence. It consisted of over fifty pages and thirty exhibits in addition to two addendums which contained vital information for the Court's decision. Ms. Gasner interviewed at least fourteen individuals over the course of her investigation in addition to participating in the bankruptcy proceeding.
Sarah Chussler, Esq., court-appointed counsel to Steven S., is awarded the reasonable sum of $134,325.00 for 298.5 hours of professional services and $951.19 for disbursements (see NYSCEF Doc. 356). Ms. Chussler has been practicing law since 2013, and is a partner at Abrams Fensterman LLP in the Mental Health and Elder Law department. She is a member of the New York State Bar Association, Elder Law and Special Needs Section and currently serves as the Vice Co-Chair of the Elder Abuse Committee. She is also a member of the New York State Bar Association Health law Section, Nassau County Bar Association Elder Law Social Services & Health Advocacy Committee, and the Brooklyn Bar Association elder Law Committee. She was selected as a New York Metro "Rising Star" in New York Elder Law by "Super Lawyers" in 2019, 2020, and 2021, and was selected to the Best Lawyers "Ones to Watch" list for Elder Law from 2021 through 2024 and for Health Care Law from 2012 through 2024. Ms. Chussler has vigorously advocated for Steven S.'s interests throughout the pendency of this case, including thirteen status conferences, settlement conferences, and oral arguments, the entirety of the trial and engaging in direct examination and cross examination of multiple witnesses.
Aytan Bellin, Esq., counsel to cross-petitioner Grace S., is awarded the reasonable sum of $175,200.00 for 298.5 hours of professional services and $46.09 for disbursements (see NYSCEF Doc. 358). Mr. Bellin has been practicing for over 32 years and is counsel to Katsky Korins LLP. He graduated magna cum laude from Yale College and received his Juris Doctor from Columbia Law School where he served as editor for the Columbia Law Review. Mr. Bellin was a law clerk in the United States District Court for the Southern District of New York, and has vast experience in both New York State and Federal Courts, litigating Medicaid benefits in both individual and class action lawsuits. Additionally, Mr. Bellin has extensive commercial [*9]litigation experience. He has received the New York State Bar Association Elder Law and Special Needs Section Award and has lectured for the continuing legal education programs for the New York State Bar Association's Elder Law and Special Needs Section as well as for the National Academy of Elder Law Attorneys. Although Mr. Bellin was not retained for the entirety of the trial, he participated in the pre-trial conferences and applications, the early stage of the trial, and returned to engage in the settlement conferences and phase four of the trial where he conducted extensive direct and cross-examination of the witnesses.
Robert Harper, Esq., counsel for cross-petitioner Shelly S.F., is awarded the reasonable sum of $247,592.52 for 464.08 hours of professional services rendered , of which $150,359.35 shall be reimbursed to Shelly F.S., and $5,760.07 in disbursements (see NYSCEF Doc. 352). Mr. Harper has been practicing since 2008 and is currently a partner with Farrell Fritz P.C., primarily specializing in trusts and estates and contested guardianship proceedings. He serves as a Special Professor of Law at Hofstra University's Maurice A Deane School of Law, has chaired the New York State Bar Association's Trusts and Estate Law Section, was Director of the Suffolk County Bar Association, co-chaired the Suffolk County Bar Association's Surrogate's Court Committee, was an officer of the Suffolk Academy of Law; co-chair of the Legislation and Governmental Relations Committee of the New York State Bar Association's Trust and Estates Law Section, and is Chair-Elect, Secretary, and Treasurer of the New York State Bar Associations' Trust and Estates Law Section. In 2023, Mr. Harper was elected a Director of the Nassau County Bar Association. Mr. Harper has served as counsel for record and co-authored an amicus curiae brief for a case that appeared before the United States Supreme Court, has had multiple articles published in various law publications and was recognized as a Super Lawyer New York metro Rising Star in the field of Estate and Trust Litigation between 2013-2022. Mr. Harper, and his co-counsel Mr. Cahn, have participated in every stage of this proceeding that was highly contested and were instrumental in the settlement of phase two and three of this proceeding. Both engaged in vigorous direct and cross examination which aided the Court in determining Steven S.'s best interests.
John Farinacci, Esq., counsel to petitioner Corinne S., is awarded the reasonable sum of $292,380.00 for 487.3 hours of professional services, of which $40,000.00 shall be reimbursed to Corinne S., and $3,923.48 in disbursements (see NYSCEF Doc. 361). Mr. Farinacci has been practicing for 25 years, concentrating in trusts, estates, Surrogate's Court and guardianship. He has been a partner at Ruskin Moscou Faltischek P.C. for ten years and is head of the Estate, Trust and Fiduciary Litigation practice group. He has extensive trial experience in New York State Supreme Court, successfully argued an appeal before the New York State Court of Appeals and practiced in the Eastern District of New York. Mr. Farinacci is a past Co-Chair of the Surrogate's Court Estates and Trusts Committee of the Nassau County Bar Association, a member of the Executive Committee of the New York State Bar Association Trusts and Estates Law Section, past Vice-Chair of the Section's Surrogate's Court Committee, past Vice-Chair of its Committee on Continuing Legal Education and a past Chair of the Surrogate's Court Committee and Estate Litigation Committee. Mr. Farinacci lectures on areas of trusts and estates and fiduciary law, has served as a speaker for the New York State Bar Association's continuing legal education programs and Nassau Academy of Law, and frequently write on Trust and Estate topics. Mr. Farinacci has been a necessary and vital party to this matter and has participated in every stage of this proceeding from the initial filing of the petition through the present. He conducted impressive direct and cross examination of the witnesses when advocating [*10]for his client and Steven S.
Accordingly, it is
ORDERED that John Newman, Esq. (Fiduciary Number 112251) of 6268 Jericho Turnpike, Commack, NY 11725, (631) 486-7802, jnewesq@gmail.com, is appointed Personal Needs Guardian and Property Management Guardian of Steven S. for an indefinite period of time and is directed to visit with Steven S. at least 24 times per year; and it is further
ORDERED that the guardian, John Newman, Esq., is authorized to have all of the powers set forth in the proposed judgment pursuant to Mental Hygiene Law §§ 81.21 and 81.22, and to exercise those powers in the best interests of Steven S., with due consideration given to Steven S.'s mental and physical impairments; and it is further
ORDERED that the monetary awards granted to the court appointees and to the privately retained attorneys shall be paid by the guardian, John Newman Esq., from the guardianship account (see Matter of John T., 42 AD3d 459, 462) within ten days after this order has been uploaded into the New York State Courts Electronic Filing System (NYSCEF); and it is further
ORDERED that the temporary guardian file a final account within sixty days of the uploading of this order on NYSCEF; and it is further
ORDERED that the Temporary Receiver, Hon. Anthony F. Marano (retired) turn over the monies in possession to the guardian, John Newman, Esq., who shall in turn (1) obtain a bond as soon as possible in the sum of $2 million dollars; and
(2) invest the sum of six million dollars in guardianship assets with each of the following principals and entities on the condition that these assets be placed in restrictive accounts and prudently and conservatively managed by
(a) Bernstein Private Wealth Management by Jeffrey Weisenfeld and Casey Sullivan as fiduciaries, 1345 Avenue of the Americas, New York, NY 10105, 212-407-5878, 212-407-5850 [fax] wiesenfeldjs@bernstein.com;
(b) Stifel, by Alan H. Cohn, CFP, First Vice-President Investments, 1393 Veterans Memorial Highway, Hauppauge, New York,11788, 631-360-5719, 631-070-2930 [fax], cohna@stifel.com, contact registered assistant Donna Russo at 631-360-5737;
(c) Madison Advisors Services by Gary Schwartz, President and CEO, 4 New King Street, Suite 120, White Plains, NY 10604, 800-222-2091 800-249-9403 [fax], cell: 914-837-8330, email: gschwartz@madison planning.com, and it is further
ORDERED that the guardian must seek pre-approval from this Court to retain any attorneys or professionals on behalf of the guardian and Steven S., and it is further
ORDERED that the guardian, John Newman, Esq., is directed to schedule an appointment, within 90 days of the date of this order,
(1) to have Steven S. evaluated and assessed by the Chair of the Department of Cardiology at St. Francis Hospital and Heart Center, 100 Port Washington Blvd., Roslyn, NY, and
(2) to have Steven S. evaluated and assessed by the Northwell Health Institute for Neurology and Neurosurgery, Memory Disorders Center, Manhasset, NY , and it is further
ORDERED that the petition and cross-petitions are granted in accordance with the findings as indicated above.
The foregoing constitutes the decision and order of this Court.
See long form judgment dated December 31, 2023.
ENTER
DATED: December 31, 2023
HON. GARY F. KNOBEL J.S.C.

Footnotes

Footnote 1: See Matter of Newman (Steven S.), 77 Misc 3d 1229(a), 181 N.Y.S.3d 442, 2022 NY Slip Op 51330(U) (Sup Ct. Nassau 2022); February 2, 2023 Order (Knobel. J.); February 21, 2023 Order (Knobel, J.); Matter of Corinne S. (Steven S.), 79 Misc 3d 777, 188 N.Y.S.3d 905 (Sup Ct. Nassau 2023); Matter of Corinne S. (Steven S.), 79 Misc 3d 1236(A), 186 N.Y.S.3d 584, 2023 NY Slip Op 50427(U) (Sup Ct. Nassau 20230.

Footnote 2: The Court notes that there is no provision in Mental Hygiene Law Article 81 specifically permitting cross petitions.

Footnote 3: Or, perhaps as Tina Turner would sing, "what's love got to do with it?"

Footnote 4: when questioned about this loss she laughed and stated, "I wasn't affected by this, sir" (testimony of Corinne S., July 26, 2023 at 81-82).